**James Thomas MYERS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A03–0310–CR–398.

Court of Appeals of Indiana.

July 20, 2004.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

James Myers' ("Myers") Motion to Suppress was denied in Elkhart Circuit Court. Myers appeals, presenting the following restated issue for review: Whether the search of Myers' vehicle was constitutionally permissible. Concluding the search of Myers' vehicle was constitutionally permissible, we affirm.

### Facts and Procedural History

On March 14, 2002, Goshen Police Officer Shaun Turner ("Officer Turner") saw a vehicle driven by Myers turn without signaling and run a stop sign. Officer Turner activated his emergency lights and followed Myers until Myers pulled into his driveway. Officer Turner parked behind Myers' vehicle and exited his cruiser at 1:19 a.m.

Myers exited his vehicle and began to walk toward his house until Officer Turner ordered him back to his vehicle. When Myers returned to his vehicle, Officer Turner approached Myers and noticed a very strong odor of cologne, the visible presence of cologne mist in Myers' vehicle, and Myers' nervousness. Officer Turner was also aware of reports indicating that Myers was involved in drug trafficking.

Accordingly, Officer Turner requested assistance from a K–9 unit. While Officer Turner waited for the K–9 unit, he filled out a warning ticket for Myers' traffic violation and began a check of Myers' license and registration. At 1:32 a.m. and before Officer Turner had completed his usual duties associated with a traffic violation, a deputy sheriff arrived with a police dog, and the police dog sniffed the exterior of Myers' vehicle.

After less than a minute, the police dog indicated that it smelled something. Officers then searched the inside of Myers' vehicle without a warrant and discovered 56.3 grams of methamphetamine, 323.77 grams of marijuana, a drug ledger, scales, and packaging items.

Myers was charged with Class A felony possession of methamphetamine in excess of three grams with intent to deliver. Myers moved to suppress the evidence obtained from the search of his vehicle.

Myers' motion was denied, and Myers was convicted. Myers was sentenced to thirty-two-years executed in the Department of Correction and to three-years suspended. Myers now appeals.

### Discussion and Decision

■ Our review of the denial of a motion to suppress is similar to other sufficiency matters. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001). The record must disclose substantial evidence of probative value that supports the trial court's denial. *Id.* Though we consider unrefuted substantial evidence contrary to the trial court's ruling, we may not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Griffith v. State*, 788 N.E.2d 835, 839 (Ind.2003).

#### A. *Fourth Amendment*

■ The Fourth Amendment protects the right of the people to be free from unreasonable searches and seizures. *California v. Acevedo*, 500 U.S. 565, 570, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The Fourth Amendment protections against unreasonable searches and seizures have been extended to the States through the Fourteenth Amendment. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind.Ct.App.2000) (citing *Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998)).

■ Pursuant to the Fourth Amendment, the police must have probable cause before searching a vehicle. *Id.* at 952 (citing *Young v. State*, 564 N.E.2d 968, 970 (Ind.Ct.App.1991)). "Probable cause to search exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Myers v. State*, 806 N.E.2d 350, 351 (Ind.Ct.App.2004), *trans.*

*granted* (citing *State v. Hawkins*, 766 N.E.2d 749, 751 (Ind.Ct.App.2002), *trans. denied*).

Myers contends that the only evidence in the record supporting the conclusion that Officer Turner had probable cause to search his vehicle was his nervousness, the scent of cologne, and the police report and that this evidence is insufficient to establish probable cause. However, these factors were not what led Officer Turner to believe he had probable cause; rather, it was the scent identification of the police dog. *See id.* (a trained dog's alert to the scent of narcotics gives rise to probable cause to search a vehicle) (citing *Cannon v. State*, 722 N.E.2d 881, 884 (Ind.Ct.App. 2000), *trans. denied*).

■ Myers challenges the use of the smell test to establish probable cause on the basis that his traffic stop had been completed by the time of the test. A smell test is not a search within the meaning of the Fourth Amendment. *Id.* (citing *Kenner v. State*, 703 N.E.2d 1122, 1125 (Ind. Ct.App.1999), *trans. denied*). However, detaining a person while such a test is performed raises Fourth Amendment concerns. *D.K. v. State*, 736 N.E.2d 758, 761 (Ind.Ct.App.2000) (once the purpose of the initial traffic stop has been completed, an officer cannot further detain the vehicle unless something that occurred during the stop generated the necessary reasonable suspicion to justify further detention).

■ Here, the record supports the trial court's determination that Myers' traffic stop was not completed by the time of the smell test. Myers was pulled over at 1:19 a.m., and the test—which lasted less than a minute—was conducted at 1:32 a.m. Officer Turner was still processing Myers' ticket during the test. A traffic stop lasting less than fifteen minutes is not

excessive. Accordingly, Myers was not detained for longer than necessary.[1]

 Myers also challenges the absence of a warrant supporting the search of his vehicle. Searches conducted without judicial approval are per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions. *Green v. State*, 647 N.E.2d 694, 695 (Ind.Ct.App.1995), *trans. denied.* The State has the burden of proving that an exception to this requirement exists. *Id.*

A panel of this court recently concluded that, because a vehicle was surrounded by officers in a school parking lot, the vehicle was not mobile and a warrant was required before searching the vehicle. *Scott v. State*, 775 N.E.2d 1207, 1210–11 (Ind.Ct. App.2002), *trans. denied.* However, a subsequent panel of this court, considering almost identical circumstances, concluded that a warrant was not required. *Myers*, 806 N.E.2d at 352 n. 5 (disapproving of *Scott*).[2]

Myers urges this court to follow *Scott* and invalidate the warrantless search of his vehicle based upon the inherent immobility of a vehicle that is seized by the police. However, a review of precedent in this area reveals not only that the subsequent immobility of a vehicle is irrelevant to Fourth Amendment analysis but that the concern that evidence may be lost as a result of vehicular mobility is little more than a façade, as the mobility of a vehicle pulled over by an officer with probable cause is reduced almost to the point of elimination. *See U.S. v. Ross*, 456 U.S. 798, 830, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (Marshall, J. Dissenting) (the mobility rationale is somewhat of a misnomer, since the police ordinarily can remove the vehicle's occupants and secure the vehicle on the spot).

 Rather, the more persuasive rationale for the vehicular exception to the warrant requirement is the limited protection provided by the warrant requirement[3] balanced against the costs associated with

---

1. Myers also asserts that the police could only rely upon suspicions related to his traffic violation. Br. of Appellant at 12 (citing *Paxton v. State*, 255 Ind. 264, 273, 263 N.E.2d 636, 641 (Ind.1970)). *Paxton* does state that "the *Carroll* doctrine might be relevant where the arresting officer ... had reason to believe that evidence *pertaining to the traffic violation* was contained somewhere in the car." 255 Ind. at 274, 263 N.E.2d at 641 (emphasis added). However, *Paxton* also stated "nor is there any evidence in the record from which we might conclude that the officers ... had probable cause to believe the car contained seizeable items." 255 Ind. at 275, 263 N.E.2d at 642. Officers are not required to ignore well-founded suspicions that criminal activity unrelated to a traffic stop might be afoot.

2. We acknowledge that transfer was recently granted in *Myers*, and that, therefore, *Myers* is without formal precedential value. However, until we receive guidance to the contrary from our supreme court, we are persuaded by the logic and reasoning of *Myers*.

3. If a warrant is required, the officer may detain the suspect until a warrant is obtained. Accordingly, the only practical effect of a warrant requirement—with regard to unwanted police intrusions—would be to exchange an unwanted search for an unwanted seizure. Also, if a warrant is required, an officer must (1) possess probable cause and (2) demonstrate to a judicial officer that probable cause exists before conducting the search. If a warrant is not required, the officer must (1) possess probable cause and (2) demonstrate to a judicial officer that probable cause existed after conducting the search—subjecting the evidence to the exclusionary rule and the officer to civil liability if the search was conducted for improper motives. *See Gibson v. State*, 733 N.E.2d 945, 952 (Ind.Ct.App.2000) (the facts necessary to demonstrate probable cause for a warrantless search are not materially different from those which would authorize a warrant) (citing *Young*, 564 N.E.2d at 970).

obtaining a warrant in the repetitive circumstances of traffic stops. *Scott's* holding was based upon the premise that officers surrounded the vehicle in question while additional officers detained the suspect and the police could have maintained the vehicle's immobile status while obtaining a warrant.[4] 775 N.E.2d at 1210–11. Indeed, *Scott's* facts and holding demonstrate the cost of obtaining a warrant: several officers' time spent detaining the suspect and the vehicle while a warrant was obtained.[5]

Accordingly, we are of the belief that the vehicular exception to the Fourth Amendment warrant requirement is no longer substantially grounded upon the concern that the suspected evidence in question may be driven away and lost forever. Rather, a close examination of recent Fourth Amendment jurisprudence reveals that the vehicular exception is based upon a balancing of the exclusionary rule, the civil remedies available to suspects searched for improper motives, the reduced privacy expectation associated with regulated highways, and the fact that the warrant requirement merely exchanges an unwanted search for an unwanted seizure against the costs necessary to provide for the warrant requirement. *See Bd. of Educ. v. Earls,* 536 U.S. 822, 830, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (Fourth Amendment protections balance the effect upon individual rights against legitimate government interests).

For all of these reasons, we are persuaded by the holding of *Myers* rather than that of *Scott.* The *Myers'* court relied upon mandatory United States Supreme Court precedent to the effect that a vehicle may be searched without a warrant if (1) the vehicle is readily mobile or capable of being driven *when the police first seized it* and (2) there is probable cause that the vehicle contained contraband or evidence of a crime. *See California v. Carney,* 471 U.S. 386, 392–93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (emphasis added).

In the case before us, the police had probable cause to search Myers' vehicle, and Myers' vehicle was capable of mobility when the police seized it.[6] Mandatory United States Supreme Court authority dictates that the evidence obtained from such a search is not excludable under the Fourth Amendment.

### B. *Article One, Section Eleven*

 Search and seizure analysis is slightly different under Article One, Section Eleven of the Indiana Constitution as compared to the Fourth Amendment. *Scott,* 775 N.E.2d at 1211. The purpose of Article One, Section Eleven is to protect those areas of life that Hoosiers regard as private from unreasonable police activity. *Id.* (citing *Brown v. State,* 653 N.E.2d 77,

---

**4.** We also take issue with *Scott's* reliance upon *Middleton v. State,* 714 N.E.2d 1099, 1102–03 (Ind.1999). The search at issue in *Middleton* was the search of a home rather than a vehicle. *Id.* Our research has failed to locate a single Supreme Court case authorizing the warrantless search of a home without exigent circumstances or consent; certainly, the same cannot be said concerning the search of vehicles.

**5.** If officers were required to guard a vehicle, they would be unable to respond to the many other duties required of an officer. Accordingly, a public highway warrant requirement would force Hoosiers either to incur the cost of additional police officers—to say nothing of additional magistrates—or accept a diminished law-enforcement capacity.

**6.** The fact that Myers' vehicle was in his driveway while the search at issue was conducted does not alter our analysis. The circumstances leading to this search began on a regulated highway. Accordingly, the reasons supporting the exception to the warrant requirement are still applicable. To hold otherwise would give drivers incentive to reach their own driveway when instructed to pull over.

79 (Ind.1995)). In deciding whether a warrantless search violates Article One, Section Eleven, we must determine whether, under the totality of the circumstances, the search was reasonable. *Brown,* 653 N.E.2d at 80. The State has the burden of proving that the search in question was reasonable. *Id.* at 79.

Myers cites *Scott* and *Fox v. State,* 797 N.E.2d 1173 (Ind.Ct.App.2003), *trans. denied,* for the proposition that a warrant was required to search his vehicle. However, both of these cases are distinguishable, as the vehicles in *Fox* and *Scott* were not pulled over while traveling on a regulated public highway. *Scott,* 775 N.E.2d at 1208; *Fox,* 797 N.E.2d at 1174.

We also question both cases' reliance upon *Brown.* In *Brown,* our supreme court determined that a warrant is required to search an impounded vehicle. *Brown,* 653 N.E.2d at 78. There is a material difference between the search of an impounded and a non-impounded vehicle, as the police are not required to guard an impounded vehicle while obtaining a warrant.

The fact that Myers' vehicle was pulled over while traveling on a regulated public thoroughfare distinguishes the case at bar from *Fox* and *Scott.* For reasons set forth in our Fourth Amendment analysis, the warrantless search of Myers' vehicle was also reasonable pursuant to Article One, Section Eleven.

### Conclusion

The search of Myers' vehicle was constitutionally permissible under the Fourth Amendment and Article One, Section Eleven of the Indiana Constitution.

Affirmed.

BARNES, J., and CRONE, J., concur.