Lonnie CHEATHAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0312–CR–637.

Court of Appeals of Indiana.

Dec. 9, 2004.

Carl L. Epstein, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Lonnie Cheatham brings this interlocutory appeal challenging the trial court's denial of his motion to suppress. We affirm.

### Issue

The sole issue on appeal is whether the trial court erred in denying Cheatham's motion to suppress numerous controlled substances that police discovered during a warrantless search of his automobile.

### Facts

On January 23, 2001, Indiana State Police Trooper Dean Wildauer pulled into a hotel parking lot and passed Lonnie Cheatham driving toward the exit of the hotel. Trooper Wildauer noticed Cheatham was not wearing his seat belt and that there was no light on his license plate. As Trooper Wildauer was turning around to stop Cheatham, he observed Cheatham cut off another vehicle as he made a quick turn into a gas station that shares a common drive with the hotel. Trooper Wildauer activated his lights and Cheatham came to a stop near the gas pumps. Trooper Wildauer approached the vehicle, obtained Cheatham's driver's license, performed a computer check on the license, and learned the license had expired. Trooper Wildauer wrote Cheatham warnings for the seat belt and license plate violations and informed him he was free to leave but could not drive because of his expired license. Trooper Wildauer also observed rolling papers, commonly used for marijuana cigarettes, on the rear floorboard of Cheatham's vehicle. He then informed Cheatham he had summoned another officer with a narcotics dog to the scene.

Cheatham got out of the vehicle and used the filling station's payphone in attempt to have someone pick him up and drive away his car. He was unsuccessful, however, and left the station on foot. At this point, K–9 Officer Craig Wildauer appeared at the station with his drug-sniffing dog. While the dog was walking around the car, Trooper Wildauer smelled the odor of marijuana. The dog indicated the presence of narcotics in the vehicle and Trooper Wildauer and K–9 Officer Wildauer searched the vehicle and found various controlled substances including Oxycodone, Clonazepam, Hydrocodone, Alprazolam, marijuana, methamphetamine, and LSD.

The State charged Cheatham with dealing methamphetamine as a Class B felony, possession of methamphetamine as a Class

D felony, possession of LSD as a Class D felony, possession of Oxycodone as a Class D felony, possession of Alprazolam as a Class D felony, possession of Clonazepam as a Class D felony, possession of Hydrocodone as a Class D felony, and possession of marijuana as a Class A misdemeanor. Cheatham moved to suppress evidence of the substances found in his vehicle, and the trial court denied this motion on November 12, 2003. We agreed to accept an interlocutory appeal from this denial.

## Analysis

Cheatham challenges the legality of the warrantless search of his vehicle and, consequently, the trial court's denial of his motion to suppress evidence officers obtained pursuant to that search. Cheatham contends the search violated his rights under the Fourth Amendment to the United States Constitution and Article One, Section Eleven of the Indiana Constitution. When reviewing the denial of a motion to suppress evidence, we do not reweigh the evidence and consider conflicting evidence in the light most favorable to the trial court's ruling. *Roehling v. State,* 776 N.E.2d 961, 962–63 (Ind.Ct.App.2002), *trans. denied.* We must also consider the uncontested evidence most favorable to the defendant. *Id.* at 963.

### I. Fourth Amendment

We first examine Cheatham's challenge under the Fourth Amendment. In general, the Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures. *Id.* "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Ratliff v. State,* 770 N.E.2d 807, 809 (Ind.2002).

The automobile exception to the warrant requirement arises where an officer has probable cause to believe that a vehicle contains contraband or evidence of a crime. *Gibson v. State,* 733 N.E.2d 945, 951 (Ind.Ct.App.2000). Probable cause exists where the facts and circumstances would lead a reasonably prudent person to conclude that a search of the premises will uncover evidence of a crime. *Id.* at 952. We observe that Cheatham does not contend that the officers lacked probable cause to believe that his vehicle contained contraband. Rather, Cheatham urges it was unlawful and unreasonable under the circumstances for the officers to search his vehicle without first obtaining a warrant.

The automobile exception to the warrant requirement was first announced in the Prohibition-era bootlegging case of *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). There, the Supreme Court held, "the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." *Id.* at 149, 45 S.Ct. at 283–84. The original stated justification for the rule was that "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153, 45 S.Ct. at 285. However, warrantless automobile searches are valid even "where no immediate danger was presented that the car would be removed from the jurisdiction." *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). There are essentially two reasons for this. First, later cases have established that aside from the mobility of a vehicle, a warrantless search of an automobile based upon probable cause is justified because "there is a reduced expectation of privacy

stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling." *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985). Second, the "exigency" of the automobile exception arises as of the time police first seize a vehicle; in other words, if a vehicle was readily mobile when first seized by the police, immobilization of the vehicle caused by police impoundment and arrest of the driver, for example, does not make the automobile exception inapplicable and does not invalidate a search that occurs after the immobilization. *See California v. Acevedo*, 500 U.S. 565, 569–70, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (citing *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise ... the vehicle exception comes into play." *Carney*, 471 U.S. at 392–93, 105 S.Ct. at 2070.

Thus, in *Chambers* a warrantless automobile search was valid when there was probable cause that it contained evidence of a crime, even though the search did not take place until after the automobile's occupants were arrested and the automobile was taken to a police station. *Chambers*, 399 U.S. at 44, 52, 90 S.Ct. at 1977, 1981. The Supreme Court reached the same result on nearly identical facts in *Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (per curiam). The Court summarily reversed the decision of the Texas Court of Criminal Appeals, which had held the police should have obtained a warrant to search a car that had been transported to a police station. *Id.* In *Michigan v. Thomas*, 458 U.S. 259, 262, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982) (per curiam), the Supreme Court flatly and cursorily rejected the conclusion of the Michigan Court of Appeals that no "exigent circumstances" justified the warrantless search of an automobile because the car was impounded by the police, holding that such a conclusion was "plainly inconsistent with our decisions in *Chambers* and *Texas v. White*." Instead, "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Id.* at 261, 102 S.Ct. at 3080. Similarly, in *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (per curiam), the Supreme Court concluded, again cursorily, "The holding of the [Maryland] Court of Special Appeals that the 'automobile exception' requires a separate finding of exigency [precluding police from obtaining a warrant] in addition to a finding of probable cause is squarely contrary to" Supreme Court precedent. Once again, "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996). The decision of the Supreme Court of Pennsylvania, which had held that "no exigent circumstances justified the failure to obtain a warrant," was again flatly rejected. *Id.*

▮ Therefore, under the Fourth Amendment to the United States Constitution, a search falls within the automobile exception to the warrant requirement where (1) the vehicle was readily mobile or capable of being driven when the police first seized it; and (2) probable cause existed that the vehicle contained contraband

or evidence or a crime.[1] *Carney*, 471 U.S. at 392–93, 105 S.Ct. at 2070; *Myers v. State*, 812 N.E.2d 146, 151 (Ind.Ct.App. 2004). It is clear that Cheatham's vehicle was readily mobile when police first seized it. Additionally, viewing the evidence in the light most favorable to the trial court's ruling, it is clear that Trooper Wildauer's observation of rolling papers, the odor of marijuana, and the indication from the narcotics dog gave the officers probable cause. Accordingly, the search fell within the "automobile exception" to the Fourth Amendment warrant requirement and was permissible.

## II. Article One, Section Eleven

Next, we examine Cheatham's Indiana Constitutional challenge. Article One, Section Eleven of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Automobiles are "effects" protected by Article One, Section Eleven. *Brown v. State*, 653 N.E.2d 77, 80 (Ind. 1995) (citing *Idol v. State*, 233 Ind. 307, 119 N.E.2d 428, 431 (1954)). Article One, Section Eleven "must be given a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id.* at 79. The purpose of this provision is to protect against unreasonable police activity in areas of life Indiana citizens regard as private. *Id.* Although Article One, Section Eleven was derived from the Fourth Amendment to United States Constitution, it is to be interpreted and applied independently from federal Fourth Amendment jurisprudence. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001) (citing *Baldwin v. Reagan*, 715 N.E.2d 332 (Ind.1999)).

The relevant inquiry under Article One, Section Eleven is whether the behavior of the police in conducting the search was reasonable. *Brown*, 653 N.E.2d at 80. The burden is on the State to show that given the "totality of the circumstances, the intrusion was reasonable." *Baldwin*, 715 N.E.2d at 337. If the court can declare the process reasonable, then evidence obtained in the course of the search may be lawfully admitted. *Brown*, 653 N.E.2d at 79.

Cheatham contends the result in *Fox v. State*, 797 N.E.2d 1173 (Ind.Ct.App.2003), *trans. denied*, compels us to reverse the denial of his motion to suppress. We disagree and find *Fox* distinguishable. In *Fox*, an officer received information that a man was selling cocaine out of a pickup truck parked in a motel lot. *Id.* at 1174. The officer drove by the lot, observed the vehicle, then returned to the lot with two more officers and a canine. *Id.* The canine indicated that the unoccupied truck contained narcotics and an officer observed white powder on the truck's passenger seat. *Id.* After running a check of the truck's license plate, the officers determined that Fox owned the vehicle and was staying at the hotel. *Id.* The officers

---

**1.** We respectfully disagree with other cases from this court that have held the State must prove exigent circumstances on a case-by-case basis to invoke the automobile exception under the Fourth Amendment. *See Edwards v. State*, 762 N.E.2d 128 (Ind.Ct.App.2002) *aff'd on rehearing*, 768 N.E.2d 506 (Ind.Ct. App.2002), *trans. denied; Scott v. State*, 775 N.E.2d 1207 (Ind.Ct.App.2002), *trans. denied* (2003); *Shepherd v. State*, 690 N.E.2d 318 (Ind.Ct.App.1997), *trans. denied; Green v. State*, 647 N.E.2d 694 (Ind.Ct.App.1995).

found Fox in his hotel room, and Fox agreed to accompany the officers to his truck. *Id.* Fox refused to open his truck. In response, the commanding officer on the scene instructed the others to use unlocking tools to open the truck. *Id.* Fox then pushed an officer, was arrested, and handcuffed. The commanding officer retrieved Fox's keys and unlocked the truck. *Id.* The white powder observed on the seat field-tested positive for cocaine. *Id.* at 1175.

Fox contended the warrantless search of his truck was illegal under the Fourth Amendment to the United States Constitution and Article One, Section Eleven of the Indiana Constitution and filed a motion to suppress evidence. Another panel of this court agreed and reversed the denial of Fox's motion to suppress, holding that the officers' warrantless search of Fox's vehicle was unreasonable under the Indiana Constitution because the "unoccupied truck was locked and parked in a motel lot and flanked by several officers and a canine" at the time of the search. *Id.* at 1177. The court also noted that shortly after officers searched Fox's car, the detective on the scene obtained a warrant to search Fox's hotel room. *Id.*

■ As in *Fox,* Cheatham's vehicle sat unoccupied and was surrounded by police officers and a canine at the time of the search. Even so, in *Fox,* the defendant's truck was parked in a motel parking lot, a place where cars may sit without disturbing the public or impeding a private business. Cheatham's car, however, was parked in close proximity to gasoline pumps at a filling station and Trooper Wildauer was asked by a filling station employee about moving the vehicle because it was obstructing traffic around the pumps (Tr. 16). In this respect, this case is similar to *Justice v. State,* 765 N.E.2d 161 (Ind.Ct.App.2002). In *Justice,* a police

officer had probable cause to believe that the defendant's vehicle contained evidence of a burglary and conducted a warrantless search of the vehicle. *Id.* at 166. The vehicle was stopped at a public entrance/exit to an apartment complex and was in a public thoroughfare at the time of the search. *Id.* at 167. We concluded under these circumstances that the search was reasonable as required by the Indiana Constitution. *Id.* Additionally, Cheatham was attempting to contact someone to drive his car home. Had he been successful in this endeavor, he could have absconded with the vehicle and any evidence therein.

More recently, in *Myers,* we distinguished the *Fox* opinion on the ground that in *Myers,* the defendant's vehicle "was pulled over while traveling on a regulated public thoroughfare." *Myers,* 812 N.E.2d at 152. In *Myers,* a police officer stopped the defendant for failing to signal a turn and running a stop sign. *Id.* at 148. The officer was aware of reports indicating the defendant was involved in drug trafficking and upon observing visible cologne mist and a strong cologne odor emanating from the vehicle, the officer requested assistance from a K-9 unit. *Id.* After the police dog arrived and indicated the presence of narcotics in the vehicle, officers conducted a warrantless search of the defendant's vehicle and discovered methamphetamine and marijuana. *Id.* We held that the warrantless search satisfied the requirements of the Fourth Amendment and Article One, Section Eleven of the Indiana Constitution. *Id.* at 152.

We observe that the circumstances leading up to the search in this case are substantially the same as those in *Myers.* The most salient difference between this case and *Myers* is the area in which Cheatham was traveling when he was pulled over. The record indicates that Cheatham

was traveling on a common drive between the hotel and the gas station just prior to being pulled over whereas the defendant in *Myers* was traveling on a public highway. *Id.* Although Cheatham may not have been traveling on a "regulated public thoroughfare," it does not follow that the warrantless search in this case was necessarily unreasonable. We do not believe being pulled over while traveling on a regulated public thoroughfare is a precondition to finding that a warrantless search of an automobile is reasonable. The key differences between this case and *Fox,* and the similarities with *Myers,* are that Cheatham was pulled over while operating his vehicle and the vehicle was causing an obstruction in a public place, thus demonstrating a greater urgency for conducting an immediate search. Given the totality of the circumstances, the trial court properly concluded that the search was reasonable and did not violate Cheatham's rights under Article One, Section Eleven of the Indiana Constitution.

## Conclusion

The search of Cheathams vehicle was permissible under the Fourth Amendment to the United States Constitution and Article One, Section Eleven of the Indiana Constitution. Therefore, we affirm the denial of his motion to suppress.

Affirmed.

NAJAM, J., and SULLIVAN, J., concur.